**LANDMAN CORSI BALLAINE & FORD P.C.**
One Gateway Center
Fourth Floor
Newark, NJ 07102
(973) 623-2700

Attorneys for Defendant
Darwin National Assurance Company

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO CERTIFICATE No. WAP20060221-056-06, as assignees of RAPHAEL & ASSOCIATES,<br><br>Plaintiffs,<br><br>v.<br><br>DARWIN NATIONAL ASSURANCE COMPANY,<br><br>Defendant. | Civil Action No.:<br>2:14-cv-06633-SDW-SCM |

## DARWIN NATIONAL ASSURANCE COMPANY'S ANSWER AND COUNTERCLAIM

Defendant Darwin National Assurance Company ("Darwin") answers the Complaint of Plaintiff Certain Underwriters at Lloyd's of London Subscribing to Certificate of No. WAP20060221-056-06("Certain Underwriters"), as assignees of Raphael & Associates, on knowledge, information and belief as follows:

### THE PARTIES

1. Admitted.

2. Admitted.

3. Admitted.

### COMMON ALLEGATIONS OF FACT

4. Admitted.

5. Admitted.

6. Admitted.

7. Darwin admits that Aramingo Diner (the "Diner") brought suit against Certain Underwriters. Darwin lacks knowledge or information sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 7 of the Complaint and on that basis denies those allegations.

8. Darwin admits that Certain Underwriters brought suit against Raphael & Associates. Darwin lacks knowledge or information sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 8 of the Complaint and on that basis denies those allegations.

9. Admitted.

10. Darwin admits that it did not provide a defense to Raphael & Associates for the claim by Certain Underwriters against Raphael & Associates but denies that the insurance contract issued by Darwin to Raphael & Associates (the "Darwin Policy") affords coverage for that claim or that Darwin failed to honor any obligation owed under the Darwin Policy. Darwin denies all remaining allegations contained in Paragraph 10 of the Complaint.

11. Admitted.

12. Darwin lacks knowledge or information sufficient information to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and on that basis denies those allegations.

13. Darwin admits that Certain Underwriters purport to seek to recover a settlement amount set forth in a settlement agreement but denies that a copy of the settlement agreement was attached to the complaint served on Darwin. Darwin denies that Certain Underwriters are

2

entitled to recover the settlement amount from Darwin or that Certain Underwriters are entitled to any relief from Darwin whatsoever.

## CAUSE OF ACTION
## BREACH OF CONTRACT

14. Admitted.

15. Admitted.

16. Darwin admits that it did not provide a defense to Raphael & Associates for the claim by Certain Underwriters against Raphael & Associates but denies that the Darwin Policy affords coverage for that claim or that Darwin failed to honor any obligation owed under the Darwin Policy. Darwin denies all remaining allegations contained in Paragraph 16 of the Complaint.

17. Darwin denies the allegations contained in Paragraph 17 of the Complaint and each of its subparts.

18. Darwin lacks knowledge or information sufficient information to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and on that basis denies those allegations.

19. To the extent that Paragraph 19 of the Complaint states legal conclusions, no response is required. To the extent that a response is required, Darwin lacks knowledge or information sufficient information to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and on that basis denies those allegations.

20. Darwin admits that Certain Underwriters purport to seek relief, including payment of sums as specified in Paragraph 20 of the Complaint. Darwin denies that Certain Underwriters are entitled to recover the settlement amount and/or any defense costs allegedly incurred by

Raphael & Associates from Darwin or that Certain Underwriters are entitled to any relief from Darwin whatsoever.

WHEREFORE Paragraph.  Darwin admits that Certain Underwriters purport to request a judgment as set forth in the final paragraph of Count I of the Complaint.  Darwin denies that Certain Underwriters are entitled to the relief specified in the final paragraph of Count I of the Complaint or to any relief whatsoever from Darwin.

Except to the extent expressly admitted in this Answer, Darwin denies each and every allegation of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

The "Claims Services Exclusion" in Endorsement No. 5 of the Darwin Policy states that:

> [N]o coverage will be available under this **Policy**[1] for **Loss** and **Defense Expenses**, from any **Claim** or **Disciplinary Proceeding** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> (1) lack of good faith or fair dealing in the handling of any claim or obligation arising under an insurance contract or policy or from any benefit plan;
>
> …
>
> The applicability of Exclusion (1) above may be determined by an admission, final adjudication or a finding in the proceeding constituting the **Claim** or in a proceeding separate from or collateral to the **Claim**. If any **Insured** in fact engaged in the conduct specified in this Exclusion, such **Insured** and the **Named Insured** will reimburse the Insurer for any **Defense Expenses** advanced to or on behalf of such **Insured**.

*See* Ex. 1, Darwin Policy, Endorsement No. 5.  Certain Underwriters' claims are barred in whole or in part by the Claims Services Exclusion in the Darwin Policy because the Diner's claim that Certain Underwriters paid to settle and for which Certain Underwriters now seeks recovery from Darwin was "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way

---

[1] Terms in bold appear as bold in the Darwin Policy and are defined terms in the Darwin Policy.

4

involving any actual or alleged: (1) lack of good faith or fair dealing in the handling of any claim," as expressly found by the court in the Diner's lawsuit against Certain Underwriters in its December 15, 2010 opinion.

## SECOND AFFIRMATIVE DEFENSE

Section IV.(A)(7) of the Darwin Policy excludes coverage for **Loss** or **Defense Expenses** from any **Claim** "for any actual or alleged liability under any express contract or agreement, unless such liability would have attached in the absence of such contract or agreement." *See* Darwin Policy, Section IV.(A)(7) (the "Breach of Contract Exclusion"). Certain Underwriters' claims are barred in whole or in part by the Breach of Contract Exclusion because Certain Underwriters assert that certain acts and omissions committed by Raphael & Associates in connection with the handling of the Diner's fire loss insurance claim were in "breach of contract" and/or performed "without the authority of" Certain Underwriters .

## THIRD AFFIRMATIVE DEFENSE

Certain Underwriters' claims are barred in whole or in part because Certain Underwriters and/or Raphael & Associates, by their acts or omissions to act, waived any right, or are estopped, to pursue this action against Darwin.

## FOURTH AFFIRMATIVE DEFENSE

Certain Underwriters' claims are barred in whole or in part to the extent that Certain Underwriters' settlement of the Diner's claim was not fair or reasonable.

## FIFTH AFFIRMATIVE DEFENSE

The specified coverage provided under the Darwin Policy is subject to and limited by all of its terms, conditions and exclusions. There may be other terms, conditions and exclusions of the Darwin Policy that bar or limit coverage for all or some of the amounts for which Certain

- 5 -

Underwriters seek coverage of which Darwin is presently unaware. Darwin reserves its right to raise affirmatively other terms, conditions and exclusions as defenses to coverage as appropriate.

Wherefore, Darwin respectfully requests that the Court dismiss the Complaint with prejudice, award Darwin its fees and costs, and grant Darwin such other relief as the Court deems proper.

## COUNTERCLAIM

Darwin National Assurance Company ("Darwin"), for its Counterclaim against Certain Underwriters at Lloyd's of London Subscribing to Certificate No. WAPC20060221-056-06 ("Certain Underwriters"), alleges on knowledge, information and belief as follows:

### NATURE OF THE ACTION

1. Darwin brings this action to obtain a judicial determination and declaration as to the parties' rights and obligations under Professional Liability Insurance with Employment Practices Liability Insurance Coverage policy number 0303-9625 issued to SI Raphael LTD, Inc. dba Raphael & Associates ("Raphael & Associates") for the period from May 30, 2009 to May 30, 2010 (the "Darwin Policy"). A true and correct copy of the Darwin Policy, without the application, is attached to this Counterclaim as Exhibit 1.

2. An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Darwin Policy.

3. In particular, Darwin seeks a declaratory judgment that there is no coverage for a claim asserted by Certain Underwriters against Raphael & Associates (the "Certain Underwriters' Contribution Claim"), which arises out of Raphael & Associates' handling of a fire loss insurance claim on behalf of Certain Underwriters.

## PARTIES

4. Darwin is a Delaware corporation with a principal place of business in Farmington, Connecticut. Darwin legally transacts insurance business in the State of New Jersey and within the geographical jurisdiction of this Court.

5. Certain Underwriters are citizens of the United Kingdom. Specifically, the Certain Underwriters at Lloyd's of London Subscribing to Certificate No. WAPC20060221-056-06 are Catlin Underwriting Agencies Limited ("Catlin") and Advent Underwriting Limited ("Advent"). Catlin is a citizen of the United Kingdom; it is organized pursuant to the laws of the United Kingdom with its principal place of business in London, England. Advent is a citizen of the United Kingdom; it is organized pursuant to the laws of the United Kingdom with its principal place of business in London, England.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between all plaintiffs and all defendants and the amount in controversy exceeds $75,000.

7. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) or (3).

8. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties concerning their respective rights, duties and obligations under the Darwin Policy.

## FACTUAL ALLEGATIONS

9. Aramingo Diner, Inc. (the "Diner") suffered a fire loss and sought insurance coverage under a property insurance policy issued by Certain Underwriters. Certain Underwriters retained Raphael & Associates to assist in adjusting the Diner's fire loss insurance claim on behalf of Certain Underwriters. Raphael & Associates assigned the claim handling responsibilities for the fire loss claim to its (now former) employee Kenneth Holdom ("Holdom").

10. Raphael & Associates is a third party administrator and claims adjusting company that handles and adjusts insurance claims, including commercial property insurance claims such as the Diner's fire loss claim. According to its website, Raphael & Associates "manages property and casualty claims programs throughout the United States" and "pride[s] [itself] on the ability to analyze and interpret coverage." In addition, on its website, Raphael & Associates lists Professional Liability insurance as one of its "areas of expertise."

11. The Diner was dissatisfied with the handling of its fire loss claim. On December 10, 2008, the Diner filed a lawsuit against Certain Underwriters for breach of contract, bad faith, and negligent and intentional infliction of emotional distress in connection with the alleged mishandling of the fire loss claim (the Diner's Lawsuit"). A true and correct copy of the complaint in the Diner's Lawsuit is attached as Ex. 2.

12. On August 11, 2010, the court dismissed the Diner's claims for emotional distress.

13. By letter dated December 14, 2010, counsel for Certain Underwriters advised counsel for Raphael & Associates "that should an adverse judgment be entered against Underwriters, Underwriters may pursue claims for contribution, indemnity and breach of contract against" Raphael & Associates. In particular, Certain Underwriters requested that Raphael & Associates "agree to contribute 50% pro-rate basis of any settlement." A true and correct copy of the December 14, 2010 letter is attached as Ex. 3.

14. On December 15, 2010, the court in the Diner's Lawsuit granted the Diner's motion for summary judgment on its breach of contract and bad faith claims. True and correct copies of the Opinion and Order are attached as Exhibits 4 and 5. The court awarded no damages to the Diner for its breach of contract claim against Certain Underwriters because Certain Underwriters had already paid all sums due under the Diner's property policy, but it ordered the case to proceed to trial for a determination of damages on the Diner's bad faith claim against Certain Underwriters.

15. In its Opinion, the court in the Diner's Lawsuit found that Raphael & Associates' employee, Holdom, adjusted the Diner's fire loss claim in bad faith. In particular, the court made the following findings:

   a. "From the start, Holdom hindered [the Diner] in presenting its claims."

   b. Holdom knowingly misrepresented the coverage provided by the policy by advising the Diner that the policy's "Business Personal Property" coverage did not cover food "damaged as a result of decay and deterioration" and that food loss was only covered by the policy's "Enhancement" coverage, up to a $25,000 limit of liability. In fact, according to the court, "the policy did not contain any decay or deterioration exclusion" and "the enhancement coverage was not exclusive but actually added to the $400,000 primary coverage for food loss for a $425,000 limit of liability."

   c. The Diner "faced additional delay and opposition from Holdom" on its request for a $50,000 business income loss advance. For example, Holdom informed the Diner that "the claim was only worth $10,000 but would not provide any calculation." In the face of Holdom's "intransigence," the Diner reduced the requested advance to $10,000. Holdom, however, delayed all payment an additional month.

   d. When the Diner sent Holdom additional proofs of loss, Holdom waited nine days to "reject" such proofs and offered no explanation for such "rejection."

   e. When the Diner sent Holdom a letter demanding appraisal, Holdom "refused, without explanation, to proceed to appraisal," despite "clear language" in the policy "explicitly requiring appraisal."

16. On January 5, 2011, before the January 6, 2011 hearing to determine the bad faith damages, Certain Underwriters settled the Diner's bad faith claim for $1,275,000 and requested that Raphael & Associates pay 75% of the settlement amount. Raphael declined to contribute to the

settlement. *See* Ex. 6 (true and correct copy of June 15, 2011 letter from Catlin to Raphael & Associates).

17. By letter dated June 15, 2011, Catlin, on behalf of Certain Underwriters, advised Raphael & Associates that its refusal to contribute to the settlement was "particularly troublesome in light of the fact that it's obvious the finding of bad faith against Underwriters was entirely due to the actions and inaction of its adjuster," Holdom. *Id.* Catlin further advised Raphael & Associates that "[u]nless you can come back with a suitable proposal within 30 days, we will have no alternative other than instituting litigation to effect a recovery." *Id.*

18. By letter dated October 15, 2012, counsel for Certain Underwriters advised Raphael & Associates that Certain Underwriters were "seeking to recover the $1,600,000.00 Certain Underwriters expended due to Raphael & Associates' negligence, breach of contract, and bad faith claims handling." A true and correct copy of the October 15, 2012 letter is attached as Ex. 7. According to Certain Underwriters' letter, "[d]uring the adjustment, Mr. Holdom committed the following acts giving rise to negligence, breach of contract, and bad faith claims handling causes of action:

> 1) Failure to adequately and properly keep Certain Underwriters informed of the requests made by its Insured as required by the contract, best practices, and the laws of Pennsylvania;
>
> 2) Failure to request from Certain Underwriters payments for undisputed amounts of the claim as required by Pennsylvania law;
>
> 3) Wrongfully denying claims without the authority of Certain Underwriters;
>
> 4) Wrongfully denying claims in violation of Pennsylvania law;
>
> 5) Wrongfully rejecting proofs submitted by the Insured without the authority of Certain Underwriters;

      6) Wrongfully denying the appraisal as required by the Insured in violation of Pennsylvania law and without the approval of Certain Underwriters; and

      7) Failing to timely respond to the requests of the Insured as required by Pennsylvania law."

*Id.*

**The Darwin Policy**

19. Darwin issued Professional Liability Insurance with Employment Practices Liability Coverage Policy Number 0303-9625 to S.I. Raphael, Ltd. Inc. dba Raphael & Associates for the Policy Period of May 30, 2009 to May 30, 2010 (*i.e.*, the "Darwin Policy"). Insuring Agreement I.(A) provides Professional Liability coverage and is subject to a Limit of Liability is $4,000,000 per **Claim** and in the aggregate for all **Claims** first made during the **Policy Period**, subject to a $5,000 per **Claim** Retention.

20. Insuring Agreement I.(A), as amended by Endorsement No. 7, provides in relevant part that Darwin will "pay on behalf of the **Insured Loss** and **Defense Expenses** in excess of the applicable Retention from any **Claim** first made against the **Insured** and reported to the **Insurer** during the **Policy Period** for a **Professional Services Wrongful Act** committed on or after the applicable **Retroactive Date** and before the end of the **Policy Period**."

21. Insuring Agreement I.(A), as amended by Endorsement No. 7, further provides that Darwin has "the right and duty to defend any **Claim** for a **Professional Services Wrongful Act** which is covered in whole or in part under the **Policy**, even if such **Claim** is groundless, false or fraudulent."

22. Subject to the Darwin Policy's terms and conditions, Holdom, as a former employee of Raphael & Associates, is an **Insured** under the Darwin Policy.

23. The "Claims Services Exclusion" in Endorsement No. 5 of the Darwin Policy states that:

> [N]o coverage will be available under this **Policy** for **Loss** and **Defense Expenses**, from any **Claim** or **Disciplinary Proceeding** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> (1) lack of good faith or fair dealing in the handling of any claim or obligation arising under an insurance contract or policy or from any benefit plan;
>
> …
>
> The applicability of Exclusion (1) above may be determined by an admission, final adjudication or a finding in the proceeding constituting the **Claim** or in a proceeding separate from or collateral to the **Claim**. If any **Insured** in fact engaged in the conduct specified in this Exclusion, such **Insured** and the **Named Insured** will reimburse the Insurer for any **Defense Expenses** advanced to or on behalf of such **Insured**.

*See* Ex. 1, Darwin Policy, Endorsement No. 5.

**Darwin's Denial of Coverage for Certain Underwriters' Contribution Claim**

24. Raphael & Associates tendered Certain Underwriters' Contribution Claim to Darwin and requested coverage under the Darwin Policy.

25. Darwin declined coverage for Certain Underwriters' Contribution Claim. By letter dated January 20, 2011, Darwin advised Raphael & Associates that the Claims Service Exclusion barred coverage for the claim. In addition, Darwin advised that it "reserves all of its rights and defenses under the Policy and available at law." Ex. 8.

26. By letter dated September 19, 2011, counsel for Raphael & Associates requested reconsideration of Darwin's January 20, 2011 denial of coverage through Darwin's internal appeals process. Ex. 9.

27. By letter dated October 6, 2011, Darwin advised Raphael & Associate's counsel that "[a]fter careful consideration," Darwin's Internal Appeals Panel "has concluded that the denial of coverage was appropriate." Ex. 10. In addition, Darwin advised that it "reserves all of its rights and defenses under the Policy and available at law." *Id.*

28. By e-mail dated October 29, 2012, Raphael & Associates requested that Darwin reconsider its coverage determination. Ex. 11.

29. By letter dated December 21, 2012, Darwin advised Raphael & Associates that the Claim Services Exclusion precluded coverage for Certain Underwriters' Contribution Claim. In addition, Darwin reserved its rights under Section IV.(A)(7) of the Darwin Policy, which excludes coverage for **Loss** or **Defense Expenses** from any **Claim** "for any actual or alleged liability under any express contract or agreement, unless such liability would have attached in the absence of such contract or agreement." Darwin also reserved all of its rights and defenses under the Darwin Policy, at law, and in equity. Ex. 12.

### Controversy and Ripeness

30. Certain Underwriters has made a demand on Darwin under the Darwin Policy with respect to Certain Underwriters' Contribution Claim. Darwin has denied that it has any obligation with respect to Certain Underwriters' demand, and has identified the reasons why the Darwin Policy does not afford coverage for Certain Underwriters' Contribution Claim. A controversy therefore exists that is ripe for adjudication.

### COUNT I

### (Declaratory Judgment as to Application of the Claims Services Exclusion)

31. Darwin repeats and incorporates by reference the allegations of Paragraphs 1 through 30, as if fully set forth herein.

32. Certain Underwriters' Contribution Claim, including the demands set forth in Certain Underwriters' letters to Raphael & Associates dated December 14, 2010, June 15, 2011, and October 15, 2012 (Exs. 3, 6, and 7), is based upon, arises out of, directly or indirectly results from, is in consequence of, or involves an actual or alleged lack of good faith or fair dealing in the handling of a

claim or obligation arising under an insurance contract or policy by Holdom, an **Insured** under the Darwin Policy.

33. In its December 15, 2010 opinion, the court in the Diner's Lawsuit confirmed that Holdom had in fact committed bad faith in handling the Diner's fire insurance claim.

34. Therefore, the Claims Services Exclusion is triggered and bars coverage for Certain Underwriters' Contribution Claim under the Darwin Policy.

35. Accordingly, Darwin is entitled to a judgment declaring that the Claims Services Exclusion in the Darwin Policy bars coverage for Certain Underwriters' Contribution Claim under the Darwin Policy, for both the defense and indemnification of Raphael & Associates.

36. An actual controversy exists, and Darwin has no adequate remedy at law to resolve the controversy.

## COUNT II

### (Declaratory Judgment Regarding Other Coverage Defenses)

37. Darwin repeats and incorporates by reference the allegations of Paragraphs 1 through 30, as if fully set forth herein.

38. Other terms and conditions of the Darwin Policy may ultimately be implicated even if the Darwin Policy provisions set forth in Count I do not bar or limit coverage for the Certain Underwriters' Contribution Claim. Such provisions include, but are not limited to Section IV.(A)(7) of the Darwin Policy, which excludes coverage for **Loss** or **Defense Expenses** from any **Claim** "for any actual or alleged liability under any express contract or agreement, unless such liability would have attached in the absence of such contract or agreement."

39. Nothing in this counterclaim should be construed as a waiver by Darwin of any other coverage defenses under the Darwin Policy, and Darwin reserves the right to raise all other terms and conditions of the Darwin Policy as defenses to coverage as appropriate.

14

WHEREFORE, Darwin respectfully requests that this Court enter judgment as follows:

1. Declare that, for the reasons set forth in Count I of this counterclaim, Darwin has no obligation under the Darwin Policy to provide coverage (defense or indemnification) to Raphael & Associates or any **Insured** in connection with Certain Underwriters' Contribution Claim; and declare that, for the reasons set forth in Count II of this counterclaim, Darwin's coverage obligations in connection with Certain Underwriters' Contribution Claim are barred or limited by other applicable Darwin Policy provisions and applicable law; and

2. Declare the rights and obligations, if any, of Certain Underwriters and Darwin based upon the facts as set forth above or as further established through discovery; and

3. Award Darwin such additional declaratory and other relief as the Court finds appropriate.

DATED:   October 31, 2014

Respectfully submitted,

Attorneys for Defendant/Counterclaim Plaintiff Darwin National Assurance Company

BY:   s/ Gerald T. Ford
Gerald T. Ford
**LANDMAN CORSI BALLAINE & FORD P.C**.
One Gateway Center
Fourth Floor
Newark, NJ 07102
T: (973) 623-2700
F: (973) 623-4496
gford@lcbf.com

*Of Counsel:*
Richard A. Simpson
rsimpson@wileyrein.com
Mary E. Borja
mborja@wileyrein.com
**WILEY REIN LLP**
1776 K Street NW
Washington, DC  20006
(202) 719-7000
(202) 710-7049 (fax)

WRFMAIN 13790881.2

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October 2014 a copy of the foregoing document was filed electronically and e-mailed to the following counsel:

Joseph L. Nackson, Esq.
Court Plaza, East Wing
21 Main Street – Suite 304
100 Mulberry Street
Hackensack, NJ  07601-7081

Alan B. McMaster, Esq.
Denenberg Tuffley
One Northwestern Plaza
28411 Northwestern Highway
Southfield, MI 48034

*Counsel for Certain Underwriters at Lloyd's of London Subscribing to Certificate of No.  WAP20060221-056-06, as assignees of Raphael & Associates*

                                                s/ Gerald T. Ford